# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No.** _____

HUMANA MEDICAL PLAN, INC.,

      **Plaintiff,**

vs.

WESTERN HERITAGE INSURANCE
COMPANY,

      **Defendant.**

_____/

## COMPLAINT

Plaintiff, Humana Medical Plan, Inc., files this Complaint against Western Heritage Insurance Company and states in support as follows:

### OVERVIEW

1.    This is an action under Title XVIII of the Social Security Act, 42 U.S.C. 1395 *et seq.*, to enforce the right of reimbursement of Medicare conditional payments pursuant to 42 U.S.C. § 1395y(b) and 42 U.S.C. § 1395w-22(a)(4). Plaintiff Humana Medical Plan, Inc. ("Humana") seeks to recover certain conditional payments of Medicare benefits it made with respect to medical expenses incurred by its enrollee, Mary Reale ("Reale"), a Medicare beneficiary, for which Western Heritage Insurance Company was the primary payer under the Medicare Secondary Payer ("MSP") law.

### PARTIES

2.    Plaintiff, Humana, is a Florida corporation with its principal place of business at 3501 S.W. 160th Avenue, Miramar, FL, 33027. Humana has contracted with the Centers for

1

# 1347078 v1

Medicare and Medicaid Services ("CMS") to administer Medicare benefits for Medicare beneficiaries who elect to enroll in the Medicare Advantage (Part C) and Medicare Prescription Drug (Part D) programs. As such, Humana is a Medicare Advantage ("MA") organization.

3.      Defendant Western Heritage Insurance Company is an Arizona corporation with its principal place of business at 9200 E. Pima Center Parkway, Suite 350, Scottsdale, AZ 85258.

## JURISDICTION AND VENUE

4.      This matter arises under the laws of the United States and involves a federal question. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.

5.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because diversity of jurisdiction exists between Humana and Defendant Western Heritage Insurance Company. The amount in dispute is **$80,016.17**, exclusive of interest and costs.

6.      This Court has supplemental jurisdiction over Counts Two and Three under 28 U.S.C. § 1367(a).

7.      Venue is proper in the Southern District of Florida, because (1) Defendant does business in, and thus resides in, this judicial district, and/or (2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district. 28 U.S.C. § 1391(b) and (c).

## LEGAL BACKGROUND

8.      Title XVIII of the Social Security Act ("Medicare Act") creates the Medicare Program. 42 U.S.C. § 1395, *et seq.* Medicare is a system of federally funded health insurance for people 65 and older, certain disabled persons, and persons with End Stage Renal Disease.

2

9.     Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), acting under authority delegated by the Secretary of the U.S. Department of Health and Human Services ("HHS").

10.     Part A of the Medicare Act, 42 U.S.C. § 1395c, *et seq.*, provides insurance for costs of inpatient hospital services and certain other services. Part A is available without payment of premiums to most persons who paid Medicare payroll taxes prior to becoming Medicare-eligible. Part A generally pays 100% of the cost of covered services after deductibles and coinsurance, up to Medicare coverage limits. Private contractors, mainly insurance companies, administer Part A benefits under contract with CMS. Those contractors were formerly known as Fiscal Intermediaries and are now known as Medicare Administrative Contractors.

11.     Part B of the Medicare Act, 42 U.S.C. § 1395j, *et seq.*, is a voluntary program in which the beneficiary pays premiums to Medicare, and in return Medicare pays the costs of his or her medically-necessary outpatient services, such as doctors' office visits and home health care. Generally, Part B covers 80% of the cost of such services after exhaustion of deductibles. Private contractors, mainly insurance companies, administer Part B benefits under contract with CMS. Those contractors were formerly known as Carriers and are now also known as Medicare Administrative Contractors.

12.     With the exception of certain persons with End Stage Renal Disease, each individual eligible for Medicare is entitled to elect to receive benefits under the Medicare program through the original Medicare program under Parts A and B, or through enrollment in a Medicare Advantage plan under Medicare Part C. In the Medicare Part C or Medicare Advantage program, private contractors, mainly health maintenance organizations and insurance

3

companies, administer Medicare benefits under contract with CMS.  Those contractors were formerly known as Medicare + Choice organizations and are now also known as Medicare Advantage organizations ("MA organizations").  *See* 42 U.S.C. §1395w-21(a)(1).

13.    No matter which option beneficiaries choose, Medicare Parts A and B or Medicare Part C, the benefits provided are Medicare benefits, governed by Title XVIII and the Medicare regulations promulgated thereunder by CMS.  Medicare pharmacy benefits are available through Medicare Part D.

14.    To qualify to become a Medicare Advantage plan, an MA Organization must meet strict qualifying standards and contract with CMS to provide Medicare benefits to those Medicare beneficiaries who elect to enroll in their plans.  Medicare Advantage plans must provide all Medicare benefits offered under Parts A and B.  They generally also provide additional or "supplemental" benefits.  *See* 42 U.S.C. §§ 1395w-21—1395w-29.

15.    CMS funds MA Organizations and delegates to them the obligation to administer, pay, and assume Medicare's economic risk for the Medicare benefits provided to Part C enrollees, all pursuant to the requirements of Title XVIII and CMS Medicare regulations.

16.    The funds for Medicare Advantage benefits come from the Medicare Trust Funds. *See* 42 U.S.C.S. § 1395w-23(f).

17.    When Medicare Advantage plans recover reimbursement from primary plans or other liable parties pursuant to the MSP laws, those recoveries help reduce Medicare expenditures by the Medicare Trust Funds.  Thus, MSP recoveries by MA Organizations fulfill the essential purpose of the MSP law–shifting expense from the Medicare program to primary payers.

4

18. Currently, there are over 11 million persons (about 25% of all Medicare patients) enrolled in the more than 2,800 MA plans offered nationally by more than 400 MA Organizations.

## MEDICARE ADVANTAGE ORGANIZATIONS
## AND THE MEDICARE SECONDARY PAYER LAW

19. From its inception through 1980, Medicare generally paid for medical services whether or not the recipient was also covered by another health insurance plan.

20. In response to skyrocketing costs in 1980, Congress began enacting the statutes that now comprise the Medicare Secondary Payer ("MSP") law, 42 U.S.C. § 1395y(b). By its terms, the MSP law applies to payments under Title XVIII of the Social Security Act, i.e., to the whole Medicare program.

21. The MSP law provides that when Medicare pays for treatment of an enrollee, and there is also a "primary plan," Medicare's payment is a conditional payment. The primary plan, and any entity that receives payment from a primary plan, must reimburse Medicare for the payment it made. 42 U.S.C. § 1395y(b)(2).

22. By regulation, a Medicare beneficiary who receives payment from a primary payer is required to reimburse Medicare within 60 days. *See* 42 C.F.R. § 411.24(h) ("*Reimbursement to Medicare.* If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days.").

23. If a Medicare beneficiary does not reimburse Medicare as required by 42 C.F.R. § 411.24(h), the liability insurer that is the primary plan is obligated to do so. *See* 42 C.F.R. § 411.24(i)(1) ("(1) In the case of liability insurance settlements … the following rule applies: If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must

5

reimburse Medicare *even though it has already reimbursed the beneficiary or other party*.") (emphasis added).

24.     A primary plan's responsibility for such payment "may be demonstrated by ... a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means."   42 U.S.C. § 1395y(b)(2)(B)(ii). *See also* 42 C.F.R. § 411.22(b).

25.     In the event a "primary plan" fails to reimburse Medicare for its conditional payments made in the secondary position, the MSP law authorizes a private cause of action to recover double damages from the primary plan.   42 U.S.C. § 1395y(b)(3)(A).   A primary plan includes a "liability insurance policy or plan (including a self-insured plan)."   42 U.S.C. § 1395y(b)(2)(A).

26.     Humana, as a Medicare secondary payer, has standing under 42 U.S.C. § 1395y(b)(3) to bring this private cause of action to recover double damages from defendant Western Heritage Insurance Company, as the primary payer, because Humana made conditional payments on behalf of its MA enrollee, Mary Reale, for which defendant Western Heritage Insurance Company was primarily liable and for which it did not reimburse Humana.

## FACTUAL ALLEGATIONS

27.     Humana contracts with CMS to provide and administer Medicare benefits for Medicare enrollees under Medicare Part C, the Medicare Advantage (formerly, Medicare + Choice) program.

28.     Mary Reale is a Medicare beneficiary, who – at the time of the events giving rise to this action – resided in the Hampton's West Condominium in Aventura, FL.

6

29.     Reale elected to obtain her Medicare benefits through participation in a Medicare Advantage plan administered by Humana, commencing May 1, 2004, through all times relevant to this Complaint.

30.     Donna B. Michelson, P.A. ("Michelson") is a law firm, doing business at 2937 S.W. 27th Avenue, Suite 206, Coconut Grove, FL, 33133. The Donna B. Michelson Law Firm represented Reale in connection with a personal injury claim described above. Michelson filed the lawsuit on behalf of Reale to recover damages for the medical expenses required to treat her injuries and other damages. That lawsuit was styled *Mary Reale and August Reale v. Hamptons West Condo Association, Inc., et al.*, Case No. 09-42330 CA 09 and was filed in the 11th Judicial Circuit Court, in and for Miami-Dade County, Florida.

31.     Reale sued Hamptons West Condominium Association, Inc. ("Hamptons West"), the premises' owner/possessor, for failing to maintain the premises in a reasonably safe condition and failing to warn of a dangerous condition; Paulette Johnson for negligence in opening the door and knocking Reale down; and Shirley Schwartz, as employer of Paulette Johnson, for vicarious liability for her negligence.

32.     According to the complaint filed by Donna B. Michelson, P.A. on behalf of Mrs. Reale, "On or about January 21, 2009, Plaintiff, MARY REALE, then age 86, suffered a fall at Hampton's West Condominium where she resided. The fall occurred as she attempted to enter the lobby of her building from the parking garage through the single entrance/exit door which swung outward toward the garage. The door was predominantly a solid door with only a small visibility window in the upper area of the door. As Plaintiff, MARY REALE, was standing on the outside attempting to open the door to enter the building, Paulette Johnson, a home health aide for another resident, Shirley Schwartz, was exiting the door. Paulette Johnson swung the

7

door open into MARY REALE causing her to fall." *Mary Reale and August Reale v. Hamptons West Condo Association, Inc., et al.*, Complaint, ¶ 5, Case No. 09-42330 CA 09 (11th Judicial Circuit Court, Miami-Dade County, Florida).

33.     The Complaint further alleged that, "As a result of the fall, Plaintiff, MARY REALE sustained a complex fracture to the femoral head of her right leg which required surgery consisting of a total hip replacement. Her recovery was complicated by a sacral decubitus ulcer that developed while she was in a rehabilitation nursing home. *Mary Reale and August Reale v. Hamptons West Condo Association, Inc., et al.*, Complaint, ¶ 6, Case No. 09-42330 CA 09 (11th Judicial Circuit Court, Miami-Dade County, Florida).

34.     Reale obtained treatment for the injuries she sustained in her fall from January through at least April of 2009. During that time, she obtained her Medicare benefits through a Medicare Advantage plan administered by Humana. Her provider's charges for that treatment were at least **$80,016.17**.

35.     Aside from copayments totaling $100.00, Humana fully discharged the expenses of the items and services for which Reale's providers would otherwise have charged **$80,016.17**. By virtue of its provider discounts and certain features of the Medicare Advantage program, Humana was able to do so by making conditional payments of Medicare benefits in the amount of **$20,930.96** (the **"conditional payments"**). Humana has not been reimbursed for the conditional payments it made. Western Heritage Insurance Company insured Hamptons West under a commercial general liability policy, Policy No. SCP0726070.

36.     Reale and Michelson entered into a settlement with Hamptons West and its insurer, Western Heritage Insurance Company. Pursuant to that settlement, Western Heritage

Insurance Company paid Reale and Donna B. Michelson, P.A. an amount larger than the conditional payments advanced by Humana under its Humana Medicare Advantage Plan.

37.     Under the Medicare Secondary Payer law, "A primary plan's responsibility [as the primary plan] for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B).

38.     By virtue of the settlement, Western Heritage Insurance Company became the primary payer and its policy became the primary plan under the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b)(2)(A).   As such, Western Heritage Insurance Company was required to make appropriate reimbursement for the conditional Medicare benefits advanced by Humana on behalf of Reale.

39.     Western Heritage Insurance Company disbursed the settlement payment to Reale and Michelson.   Accordingly, Reale and her attorney were required to reimburse Humana within 60 days of the payment by Western Heritage Insurance Company.   42 C.F.R. § 411.24(h).   They did not.

40.     Michelson reduced its 40% contingent fee, but stipulated that Michelson could keep as additional attorneys' fees any amount by which the law firm reduced or evaded Reale's obligation to repay the conditional payments of Medicare benefits advanced on her behalf. *See* Exhibit A.

41.     Humana demanded that its conditional payments of Medicare benefits be repaid from the settlement obtained by Reale.   On behalf of its client and itself, Michelson refused repayment.

9

42.     Because Reale and her attorney did not reimburse the Medicare payments advanced on behalf of Reale by Humana, Western Heritage Insurance Company must reimburse Medicare even though it has already paid Mrs. Reale and her attorney. *See* 42 C.F.R. § 411.24(i)(1).

43.     The provisions governing Medicare Advantage, Medicare Part C, reference the MSP law, notably in the provisions regarding a MA Organization's right to charge for reimbursement of conditional benefits.   42 U.S.C. § 1395w-22(a)(4).   Section 1395w-22(a)(4) provides that under circumstances in which the MSP law makes the MA Organization's payments secondary, the organization may charge, or authorize the actual providers to charge, the primary payer or the enrollee.   It further provides that the MA Organization may charge, or authorize the actual providers to change, at the rates a Workman's Compensation plan, auto or liability insurer, or No Fault insurer, as the case may be, would ordinarily pay, unrestrained by the usual restrictions imposed by Medicare.   In this case, those charges would be at least **$80,016.17**.

44.     Reale and Michelson have not reimbursed Humana for the conditional payments Humana advanced for services received by Reale as a result of her fall.

45.     Defendant Western Heritage Insurance Company has likewise not made appropriate reimbursement of the conditional payments of Medicare benefits advanced by Humana.

## COUNT I

### PRIVATE CAUSE OF ACTION FOR DOUBLE DAMAGES
### UNDER 42 U.S.C. § 1395y(b)(3)(A)

46.     Humana incorporates by reference the allegations of paragraphs 1 through 45 of the Complaint as if set forth herein.

47.     Congress has "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)" in accordance with the MSP law. 42 U.S.C. § 1395y(b)(3)(A).

48.     Western Heritage Insurance Company did not make primary payment to Reale's providers for the items and services for which Humana advanced the conditional payments.

49.     Western Heritage Insurance Company did not make appropriate reimbursement to Humana in accordance with the MSP law and MSP regulations.

50.     Humana brings the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A) to recover from Western Heritage Insurance Company double damages for its failure to make appropriate reimbursement as required by law.

51.     Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Humana is entitled to recover "an amount double the amount otherwise provided."

52.     Humana paid conditional payments in the amount of **$20,930.96** and is entitled to recover double that amount. Alternatively, pursuant to 42 U.S.C. § 1395w-22(a)(4), the "amount otherwise provided" is the amount a provider may charge "in accordance with the charges allowed under a law, plan, or policy" identified in 42 U.S.C. § 1395y(b)(2), which in this case were at least **$80,016.17**.

11

**COUNT TWO**

**DECLARATORY JUDGMENT
AS TO DEFENDANT'S OBLIGATION TO REIMBURSE
CONDITIONAL PAYMENTS OF MEDICARE BENEFITS
AFTER PAYMENT TO MEDICARE ADVANTAGE ENROLLEE**

53.    Humana incorporates by reference the allegations of paragraphs 1 through 52 of the Complaint as if set forth herein.

54.    Humana seeks a declaratory judgment that:

A)    Humana made conditional payments of Medicare benefits for items and services required by Reale as a result of her January 21, 2009 fall.

B)    Western Heritage Insurance Company was the primary payer under 42 U.S.C. § 1395y(b)(2) and § 1395w-22(a)(4) with respect to the conditional payments made by Humana;

C)    Western Heritage Insurance Company made a payment to Reale, a Medicare Advantage enrollee, "conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the [Western Heritage Insurance Company's] insured...." 42 U.S.C. § 1395y(b)(2)(B)(ii). *See also* 42 C.F.R. § 411.22(b). That payment was made more than 60 days prior to the filing of this action.

D)    A Medicare beneficiary or other party who receives payment from a primary payer under those circumstances is required to reimburse Medicare within 60 days. *See* 42 C.F.R. § 411.24(h), which states: "*Reimbursement to Medicare.* If the beneficiary or other party receives a

12

primary payment, the beneficiary or other party must reimburse Medicare within 60 days."

E)     If the beneficiary does not reimburse Medicare as required by 42 C.F.R. § 411.24(h), the insurer is obligated to do so. *See* 42 C.F.R. § 411.24(i)(1). ("(1) In the case of liability insurance settlements ... the following rule applies: If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.")

F)     Reale and Michelson have not repaid Humana for the conditional payments Humana advanced for items and services received by Reale as a result of her fall.  Defendant Western Heritage Insurance Company is therefore required by the Medicare Secondary Payer law and regulations to reimburse Humana for the conditional payments of Medicare benefits it advanced.

G)     Defendant Western Heritage Insurance Company has failed to repay Humana the conditional payments of Medicare benefits advanced by Humana in connection with the treatment received by Reale for the injuries she received in her January 2009 fall.

H)     Accordingly, Defendant Western Heritage Insurance Company is legally obligated to reimburse the conditional payments, plus interest.

55.     This Count presents a novel and important question of federal law: *In this case, a liability insurer, Defendant Western Heritage Insurance Company, has settled with a Medicare Advantage enrollee on terms that anticipated the enrollee and/or the enrollee's attorney would*

13

*reimburse the Medicare Advantage organization for the conditional payments advanced by the Medicare Advantage organization. As often happens, the enrollee and her attorney failed or refused to reimburse the Medicare Advantage organization. In that all-too-common situation, does the liability insurer, as the primary payer under the MSP law, remain liable for making appropriate reimbursement to the Medicare Advantage organization – as stated in 42 C.F.R. § 411.24(i)(1)? That regulation, which is made applicable to Medicare Advantage by virtue of 42 C.F.R. § 422.108(f), states: "(1) In the case of liability insurance settlements … the following rule applies: If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party."* The courts have not addressed this question in the context of Medicare Part C.

56.     Humana's claim "turn[s] on substantial questions of federal law" – the applicability and validity of the MSP law and the regulations issued thereunder. It thus falls within the narrow category of cases over which federal courts have jurisdiction under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).*

57.     Count Two raises "a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id. at 314.*

58.     The federal issue presented is a "substantial" issue that implicates a "substantial federal interest" because it is an issue that has created uncertainty in the settlement of personal injury actions around the country. It is also an issue that, according to CMS, involves millions of dollars in Medicare benefits <u>annually</u>.[1] In short, Count Two necessarily raises "an important

---

[1]     *See* Medicare Program,; Policy and Technical Changes to the Medicare Advantage and the Medicare

issue of federal law that sensibly belongs in a federal court." Federal courts should determine

what responsibilities liability insurers have when they settle with Medicare Advantage enrollees.

**COUNT THREE**

**CLAIM UNDER STATE LAW TO COLLECT THE CHARGES**
**AUTHORIZED BY 42 U.S.C. § 1395w-22(a)(4)**

59.     Humana incorporates by reference the allegations of paragraphs 1 through 58 of

the Complaint as if set forth herein.

60.     Section 1842(a)(4) of the Social Security Act, 42 U.S.C. § 1395w-22(a)(4),

provides:

> **(4) Organization as secondary payer.** Notwithstanding any other
> provision of law, a Medicare [Advantage] organization may (in the
> case of the provision of items and services to an individual under a
> Medicare [Advantage] plan under circumstances in which payment
> under this subchapter is made secondary pursuant to section 1395y
> (b)(2) of this title) charge or authorize the provider of such services
> to charge, in accordance with the charges allowed under a law,
> plan, or policy described in such section—
>
> (A) the insurance carrier, employer, or other entity which under
> such law, plan, or policy is to pay for the provision of such
> services, or
>
> (B) such individual to the extent that the individual has been paid
> under such law, plan, or policy for such services.

61.     "Notwithstanding any other provision of law," Humana is entitled, under §

1395w-22(a)(4), to charge Defendant Western Heritage Insurance Company for the treatment

provided to its enrollee, Reale.

62.     Humana has charged Western Heritage Insurance Company and sues to collect its

charges.

---

Prescription Drug Programs, Final Rule, 75 Fed. Reg. 19678, at 19771 (April 15, 2010); Proposed Rule, 74
Fed. Reg. 54634, at 54689 (October 22, 2009).

63.    Humana sues to collect its charges pursuant to state law.  For purposes of this action, Humana does <u>not</u> contend that 42 U.S.C. § 1395w-22(a)(4) implies a federal cause of action to collect charges for medical services.

64.    Humana sues for account stated, liability under an implied by law contract between Humana and Western Heritage Insurance Company, and unjust enrichment.

**PRAYER FOR RELIEF**

Based on the above claims, Plaintiff, Humana Medical Plan, Inc., seeks the following relief:

(1)    Reimbursement for all conditional payments made by Humana in connection with the injuries sustained by its enrollee, Reale, in her January 2009 fall;

(2)    Double damages under 42 U.S.C. § 1395y(b)(3)(A);

(3)    Declaratory relief;

(4)    Pre- and post-judgment interest;

(5)    Attorneys' fees; and

(6)    Any other relief the Court deems proper.

**WHEREFORE**, Humana prays that the Court enter judgment on behalf of Humana and against Defendants and award Humana all requested relief.

Respectfully submitted this 11th day of January, 2012

Daniel Alter
Florida Bar No.: 0033510
GRAY ROBINSON, P.A.
401 East Las Olas Boulevard, Suite 1850
Fort Lauderdale, FL 33301
Telephone:  954-761-8111
Facsimile:  954-761-8112
dan.alter@gray-robinson.com

# 1347078 v1

and

Lance K. Oliver*
Eileen Kuo*
LAWRENCE & RUSSELL, PLC
5178 Wheelis Drive
Memphis, Tennessee 38117
Telephone:  901-844-4431
Facsimile:  901-844-4435

**_ATTORNEYS FOR PLAINTIFF_**

* Motions for admission _pro hac vice_ to be submitted

17