UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 1:12-cv-20123-MGC

| | |
|---|---|
| HUMANA MEDICAL PLAN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| WESTERN HERITAGE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF HUMANA MEDICAL PLAN, INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Under Fed. R. Civ. P. 56, Plaintiff, Humana Medical Plan, Inc. ("Humana"), submits the following Motion for Summary Judgment on Counts I and II. In support of its Motion, Humana relies on the following memorandum.

Dated: December 29, 2014.

Respectfully submitted,

s/ Daniel Alter

[Lead Counsel]
Michael P. Abate*
* *Application for admission pro hac vice*
  *pending*
DINSMORE & SHOHL, LLP
101 South Fifth St., Ste. 2500
Louisville, Kentucky 40202
Telephone: 502-540-2359
Facsimile: 502-585-2207
Michael.abate@dinsmore.com

[Local Counsel]
Daniel Alter

FL Bar No.: 0033510
Gray Robinson, P.A.
401 E. Las Olas Blvd., Ste. 1850
Ft. Lauderdale, FL 33301
Telephone: 954-761-8111
Facsimile: 954-761-8112
dan.alter@gray-robinson.com

ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

INTRODUCTION ........................................................................................................ 1

PROCEDURAL POSTURE ........................................................................................... 1

ARGUMENT AND AUTHORITIES............................................................................. 2

    I.    Humana is entitled to a judgment declaring that Western Heritage, as a primary payer under the Medicare Act's MSP provisions, is responsible for reimbursing the Medicare benefits Humana advanced. .......................................... 2

        A.    The MSP law requires repayment of conditional Medicare benefits advanced in anticipation of payment by a primary payer. .......................... 2

        B.    As the primary payer, Western Heritage is obligated to reimburse Humana because Reale failed to reimburse Humana within sixty days. ...................................................................................................... 4

        C.    The MSP law and regulations apply in the Medicare Advantage context............................................................................................... 5

        D.    Applying 42 C.F.R. § 411.24(i) to the facts of this case, Western Heritage remains liable to Humana notwithstanding its payment to Reale. ................................................................................................... 7

        E.    This issue is important because if liability insurers are at risk for non-payment by non-compliant MA enrollees and personal injury counsel, they will take measures to assure that MA organizations are reimbursed – and in doing so, will save the Medicare program considerable sums. ................................................................................. 8

    II.    Humana is entitled to summary judgment on its claim for double damages under the MSP private cause of action. ................................................................ 9

        A.    The undisputed facts establish that Humana is entitled to recover under the MSP private cause of action. ...................................................... 9

        B.    Humana is entitled to recover double the amount Western Heritage owed........................................................................................................ 12

    III.    The state court action filed by Reale does not defeat this motion, because state courts do not have jurisdiction to interfere with the Medicare program. ..... 13

CONCLUSION........................................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................... 21

# TABLE OF AUTHORITIES

*Cases*

*Acquisto v. Secure Horizons ex rel. United Healthcare Ins. Co.,* 2011 WL
6780870 (M.D. Fla. Dec. 27, 2011) *aff'd in part,* 504 F. App'x 855
(11th Cir. 2013)................................................................................................13

*Associates Rehabilitation Recovery, Inc. v. Humana Medical Plan, Inc.,*
No 14-cv-21677-KMM, Doc. 42, (S.D. Fla. Dec. 10, 2014)................................15

*Baptista v. JP Morgan Chase Bank, N.A.,* 640 F.3d 1194 (11th Cir. 2011)...................17

*Bucker v. Heckler,* 804 F.2d 258 (4th Cir. 1986)...................................................18

*Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837 (1984)........................................6

*Cochran v. U.S. Health Care Financing Admin.,* 291 F.3d 775
(11th Cir. 2002)................................................................................................18

*Collins v. WellCare Healthcare Plans, Inc.,* 2014 U.S. Dist. LEXIS 174420
(E.D. La. Dec. 16, 2014)..............................................................................10, 15

*Cupp v. Johns and Humana Ins. Co.,* 2014 U.S. Dist. LEXIS 30537 (W.D.
Ark. Mar. 10, 2014) ..........................................................................11, 15, 16, 18

*Einhorn v. CarePlus Health Plans, Inc.,* 2014 U.S. Dist. LEXIS 126124,
(S.D. Fla. Aug. 29, 2014).............................................................................15, 18

*Fanning v. U.S.,* 346 F.3d 386 (3d Cir. 2003) .......................................................18

*Fid. Fed. Sav. Loan Ass'n v. de la Cuesta,* 458 U.S. 141 (1982) .................................17

*Freeze v. Coastal Bend Foot Specialist,* 2006 U.S. Dist. LEXIS 87156
(S.D. Tex. Dec. 1, 2006) ....................................................................................15

*Geer v. Amex Assur. Co.,* Case No. 09-11917, 2010 U.S. Dist. LEXIS
66834 (E.D. Mich. July 6, 2010) .........................................................................11

*Glover v. Liggett Grp., Inc.,* 459 F.3d 1304 (11th Cir. 2006)........................................3

*Hadden v. United States of America,* 661 F.3d 298 (6th Cir. 2011)................................18

*Hardman v. Koslowski,* 135 So. 3d 434 (Fla. 1st DCA 2014)......................................14

*Haro v. Sebelius,* 747 F.3d 1099 (9th Cir. 2013).....................................................18

*Hearn v. Dollar Rent A Car, Inc.,* 726 S.E.2d 661 (Ga. App. 2012)................................5

*Heckler v. Ringer,* 466 U.S. 602 (1984) ..............................................................14

*Humana Ins. Co. v. Farmers Texas County Mut. Ins. Co.,* No. 13-cv-611
(W.D. Tex. Sep. 24, 2014)..................................................................................10

*Humana Medical Plan, Inc. v. Valdez,* 25 F.Supp.2d 1347 (M.D.Fla.1997)....................17

*Humana Medical Plan, Inc., v. Mary Reale, et al.,* Fla. 3rd DCA,
Case No. 3D12-2883..........................................................................................18

*In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d
353 (3d Cir. 2012), *cert. denied, sub nom. GlaxoSmithKline v.
Humana Med. Plans, Inc.,* 133 S. Ct. 1800 (Apr. 15, 2013)......................3, 6, 7, 9, 10

*In re Zyprexa Prods. Liab. Litig.*, 451 F. Supp. 2d 458 (E.D.N.Y. 2006) ......................................18

*Mary Reale et al. v. Humana Medical Plan, Inc.*, Case No. 10-31906CA30
(Fla. 11th Jud. Cir. Ct. Jun. 4, 2010)......................14, 17, 18

*Masey v. Humana, Inc.*, 2007 WL 2788612 (M.D. Fla. Sept. 24, 2007) ......................11

*Michigan Spine and Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins.
Co.*, 758 F.3d 787 (6th Cir. 2014)......................10

*Neff v. Sebelius*, 2013 Wl 5492938 (D. Mont. Oct. 1, 2013) ......................18

*Perry v. United Food & Commercial Workers Dist. Unions, 405 & 442,*
64 F.3d 238 (6th Cir. 1995) ......................11

*Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078
(N.D. Cal. 2011)......................16

*Pollo Operations, Inc. v. Tripp*, 906 So. 2d 1101 (Fla. 3d DCA 2005)......................5

*Potts v. Rawlings Co., LLC.*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012)......................16, 17

*Redmond v. Secure Horizons, Pacificare, Inc.*, 60 Cal. App. 4th 96
(Cal. App. 1997) ......................15

*Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S.Ct. 817 (2013)......................6

*Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1 (2000)......................14

*State Farm Mut. Auto. Ins. Co. v. Joerg*, 2013 WL 3107207
(Fla. 2d DCA 2013) ......................17

*Strommen v. Strommen*, 927 So. 2d 176 (Fla. 2d DCA 2006)......................14

*Sullivan v. Farm Bureau Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 35817
(W.D. Mich. Apr. 1, 2011)......................11

*Taransky v. Sebelius*, 956 F. Supp. 2d 563 (D.N.J. 2013) ......................18

*Taransky v. Sec'y of the United States HHS*, 760 F.3d 307
(3rd Cir. July 29, 2014)......................18

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994)......................7

*Thomas v. Standard Fire Ins. Co.*, 2012 WL 3242226
(E.D. Tex. Aug. 7, 2012) ......................9

*Uhm v. Humana Inc.*, 620 F.3d 1134 (9th Cir. 2010) ......................17

*Wilson v. State Farm Mut. Auto. Ins. Co.*, 795 F. Supp. 2d 604
(W.D. Ky. 2011) ......................5

*Wilson v. United States*, 405 F.3d 1002 (Fed. Cir. 2005) ......................18

*Zinman v.Shalala*, 67 F.3d 841 (9th Cir. 1995) ......................18

*Statutes*

42 U.S.C. § 1395ff ........................................................................................14

42 U.S.C. § 1395ii ........................................................................................14

42 U.S.C. § 1395w-22(a)(4) ..........................................................................16

42 U.S.C. § 1395w-22(g) ..............................................................................15

42 U.S.C. § 1395w-22(g)(1)(a) ......................................................................13

42 U.S.C. § 1395y(b)(2) ..............................................................................4, 5

42 U.S.C. § 1395y(b)(2)(A) .............................................................................2

42 U.S.C. § 1395y(b)(2)(A)(ii) ........................................................................3

42 U.S.C. § 1395y(b)(2)(B)(i) ..........................................................................6

42 U.S.C. § 1395y(b)(2)(B)(ii) .......................................................3, 6, 11, 12

42 U.S.C. § 1395y(b)(2)(B)(iv) ........................................................................6

42 U.S.C. § 1395y(b)(3)(A) ...........................................................2, 9, 10, 20

42 U.S.C. § 405 ...........................................................................................15

42 U.S.C. § 405(g) ..................................................................................14, 15

42 U.S.C. § 405(h) ..................................................................................13, 18

42 U.S.C. § 1395w-21(a) .........................................................................11, 17

42 U.S.C. § 1395w-22(a)(4)(A) .......................................................................6

42 U.S.C. § 1395w-22(g)(5) ....................................................................13, 14

Fla. Stat. § 768.76 ..................................................................................16, 17

Fla. Stat. § 768.76(2)(a)(1) ...........................................................................17

***Rules & Regulations***

42 C.F.R. § 411.21 .........................................................................................4

42 C.F.R. § 411.22(b) .....................................................................................3

42 C.F.R. § 411.24 ......................................................................................4, 6

42 C.F.R. § 411.24(h) ..................................................................................4, 5

42 C.F.R. § 411.24(i)(1) ............................................................................5, 12

42 C.F.R. § 422.108(f) ..................................................................................17

42 C.F.R. § 422.566(a) ..................................................................................13

42 C.F.R. § 422.582(b) ..............................................................................7, 13

42 C.F.R. § 422.582(c) ....................................................................................7

42 C.F.R. § 422.108(f) ............................................................................................6

Fed. R. Civ. P. 1 ...................................................................................................12

Fed. R. Civ. P. 12(a)(4)(A) .....................................................................................1

## INTRODUCTION

Humana filed this action to force Defendant, Western Heritage Insurance Company ("Western Heritage"), to comply with its obligations under the Medicare Secondary Payer (MSP") law.  In its capacity as a Medicare Advantage ("MA") organization, Humana Medical Plan, Inc. ("Humana") advanced conditional Medicare payments on behalf of a Medicare Advantage enrollee, Mary Reale ("Mrs. Reale"), for treatments that Western Heritage was responsible for as a primary payer.  Count I asserts a claim under the Medicare Secondary Payer private cause of action for double damages.  Count II seeks a declaration that Western Heritage, the primary payer, remains liable under the MSP law and implementing regulations even though it paid Mrs. Reale, who in turn failed to reimburse Humana.

## PROCEDURAL POSTURE

Western Heritage moved to dismiss the Complaint in its entirety.  On March 29, 2013, the Court entered an Endorsed Order, Doc. 41, denying the motion to dismiss with respect to Counts I and II, but granting the motion with respect to the alternative state-law theories pled in Count III.  Humana now moves for summary judgment on Counts I and II, submitting evidence that establishes its entitlement to relief.

The facts of this case are simple and uncontested.[1]  The facts material to Counts I and II are not in dispute in the important procedural sense that the Court denied Western Heritage's motion to dismiss on March 29, 2013, Doc. 41, and Western Heritage did not file an Answer "within 14 days after notice of the court's action" as required under Fed. R. Civ. P. 12(a)(4)(A). In fact, a year-and-a-half later, Western Heritage has still not filed an Answer admitting or denying any of the allegations contained in the Complaint.  The material facts are also not in

---

[1] *See* the concurrently filed Statement of Undisputed Material Facts ("SUMF").

dispute in the substantive sense that, insofar as Humana is aware, the parties do not disagree on the material facts, only their legal consequences.

Each of the two counts on which Humana seeks summary judgment is independent of the other and seeks different relief: in Count II, discussed first below, Humana seeks a declaration that Western Heritage is the primary plan and remains liable to Humana even though it paid the money due Humana to Mrs. Reale and her attorney; in Count I, Humana seeks double damages under the MSP private cause of action created by 42 U.S.C. § 1395y(b)(3)(A).

### ARGUMENT AND AUTHORITIES

**I.      Humana is entitled to a judgment declaring that Western Heritage, as a primary payer under the Medicare Act's MSP provisions, is responsible for reimbursing the Medicare benefits Humana advanced.**

Count II of the Complaint presents a straightforward question of federal law: if a liability insurer settles with a Medicare Advantage enrollee, but the enrollee and her attorney fail or refuse to reimburse the Medicare Advantage organization, "does the liability insurer, as the primary payer under the MSP law, remain liable for making appropriate reimbursement to the Medicare Advantage organization?"[2]  As explained below, controlling MSP regulations, which apply fully in the Medicare Advantage context, answer that question in the affirmative.  Thus, Humana is entitled to a judgment declaring that Western Heritage is obligated to reimburse Humana's conditional Medicare payments.

#### A.      The MSP law requires repayment of conditional Medicare benefits advanced in anticipation of payment by a primary payer.

The Medicare Secondary Payer law, 42 U.S.C. § 1395y(b)(2)(A), provides: "Payment under this title may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that . . . payment has been made or can reasonably be expected to be

_____

[2] Complaint, Doc. 1, ¶ 55.

made under a . . . liability insurance policy or plan (including a self-insured plan)."  "This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay."  *Glover v. Liggett Grp., Inc.,* 459 F.3d 1304, 1306 (11th Cir. 2006) (quotation marks and citation omitted).  This rule applies to all Medicare benefits paid "under this title," including payment under Parts A or B (Original Medicare) and Part C (Medicare Advantage), all of which appear in Title XVIII of the Social Security Act: "Health Insurance for the Aged and Disabled."[3]

The statute goes on to define the term "primary plan," in the context of Medicare beneficiaries' personal injury settlements, as "an automobile or liability insurance policy or plan (including a self-insured plan)" that has a demonstrated responsibility to pay for the medical items or services that Medicare benefits have already paid for.[4]  The statute explains that responsibility to pay for the medical items and services in question may be "demonstrated" by, among other things, a settlement agreement:  "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means."[5]  Application of these provisions to the facts of this case is straightforward.

Here, Reale brought personal injury claims against Hamptons West.  Western Heritage was Hamptons West's insurer with respect to Reale's personal injury case.  The settlement

---

[3] *See In re Avandia, Sales Practices & Products Liab. Litig.,* 685 F.3d 353, 360 (3d Cir. 2012), *cert. denied, sub nom. GlaxoSmithKline v. Humana Med. Plans, Inc.,* 133 S. Ct. 1800 (Apr. 15, 2013) ("Since the MSP Act and its private cause of action provision do not attach any narrowing language to 'payments made under this subchapter,' that phrase applies to payments made under Part C as well as those made under Parts A and B.").
[4] 42 U.S.C. § 1395y(b)(2)(A)(ii), (B)(ii).
[5] 42 U.S.C. § 1395y(b)(2)(B)(ii); *see also* 42 C.F.R. § 411.22(b).

demonstrates the responsibility of the Western Heritage policy to pay for the medical treatment required to treat Reale's injuries—services for which Humana had paid Medicare benefits. Thus, when Western Heritage settled Reale's personal injury claim, its policy became the "primary plan" and Western Heritage itself became the "primary payer."[6]

Under the MSP law, the onus of reimbursing Medicare is *on the primary payer* even though Medicare beneficiaries or other entities may *also* become responsible if they receive payment from the primary payer.[7]   Thus, the primary payer (here, Western Heritage) was responsible for paying or for reimbursing the relevant Medicare contractor (here, Humana) for the medical expenses at issue.

> **B.    As the primary payer, Western Heritage is obligated to reimburse Humana because Reale failed to reimburse Humana within sixty days.**

When it implemented the MSP law through its regulations, the Centers for Medicare and Medicaid Services ("CMS") anticipated the very situation before the Court: A Medicare beneficiary brings a tort claim and receives funds via settlement or judgment from a liability insurer; the insurer pays the Medicare beneficiary a lump sum that includes the amount due for the items and services Medicare benefits paid for; and the Medicare beneficiary or his or her attorney refuses to reimburse the Medicare benefits.

CMS addresses this problem in two simple regulations.  First, in 42 C.F.R. § 411.24(h), CMS requires a Medicare beneficiary who receives payment from a primary payer to reimburse Medicare within 60 days.[8]   Then, in § 411.24(i)(1), CMS explains that if the Medicare beneficiary does not repay Medicare within 60 days, the liability insurer remains obligated to do

---

[6] *See* 42 C.F.R. § 411.21.
[7] *See* 42 U.S.C. § 1395y(b)(2); 42 C.F.R. § 411.24.
[8] 42 C.F.R. § 411.24(h) ("*Reimbursement to Medicare,* If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days.").

so: "(1) In the case of liability insurance settlements . . . the following rule applies:  If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare *even though it has already reimbursed the beneficiary or other party.*"[9]  As one court succinctly explained, under 42 C.F.R. § 411.24(i)(1), a liability insurer "is *absolutely liable* to Medicare should [the beneficiary] not satisfy the Medicare lien from his settlement funds."[10]

In *Pollo Operations, Inc. v. Tripp*, Florida's Third District Court of Appeal explained § 411.24(i)(1) this way: "If the recipient of the third-party payment fails to reimburse Medicare within sixty days, as required under 42 C.F.R. § 411.24(h), then 'the third party payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.'"[11] The rule is a familiar part of settling with Medicare beneficiaries, as demonstrated in *Hearn v. Dollar Rent A Car, Inc.*: "Under this statutory and regulatory framework, [the primary payer] faced potential liability for both the amount of any Medicare lien and double this amount if [the beneficiary] failed to satisfy any such lien within 60 days of receiving the settlement check."[12]

In short, where a primary payer has a demonstrated responsibility to pay for items or services for which Medicare has paid, but delivers the payment due Medicare to the Medicare beneficiary, the primary payer remains responsible under § 411.24(i)(1) for reimbursing the Medicare benefits if the beneficiary fails to do so.

C.     **The MSP law and regulations apply in the Medicare Advantage context.**

These same reimbursement rules apply in the Medicare Advantage Context. By its plain terms, the MSP law applies to all "payment[s] under this title," referring to the whole of Title

---

[9] 42 C.F.R. § 411.24(i)(1) (emphasis added).
[10] *Wilson v. State Farm Mut. Auto. Ins. Co.*, 795 F. Supp. 2d 604, 607 (W.D. Ky. 2011) (emphasis added).
[11] 906 So. 2d 1101, 1105 (Fla. 3d DCA 2005).
[12] 726 S.E.2d 661, 668 (Ga. App. 2012)

XVIII of the Social Security Act.[13]   That includes payments made by Medicare Advantage organizations under Part C of that Title.

Part C itself confirms that the MSP law applies to payments by Medicare Advantage organizations. "Notwithstanding any other provision of law," a Medicare Advantage organization may bill a primary plan "under circumstances in which payment under this subchapter is made secondary pursuant to" the MSP provisions.[14]

Moreover, CMS regulations also make clear that an "MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter."[15] The MSP regulation at issue here, 42 C.F.R. § 411.24, is codified in subpart B of part 411 and thus applies to Medicare Advantage.  In order to eliminate any lingering confusion on the matter, CMS issued a special memorandum to MA organizations in December 2011, reminding them that they have "the right (and responsibility) to collect" from primary payers.[16]

These regulations, which represent the Secretary's interpretations of a statute she is charged with administering, are entitled to "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."[17]  This Court "must uphold the Secretary's

---

[13] Section 1395y(b)(2) begins, "Payment under this subchapter may not be made . . .." *See also id.* §1395y(b)(2)(B)(i) ("payment under this subchapter"); § 1395y(b)(2)(B)(ii) ("any payment made … under this subchapter"); § 1395y(b)(2)(B)(iii) ("to recover payment made under this subchapter"); § 1395y(b)(2)(B)(iv) ("payment made under this subchapter"); §1395y(b)(2)(B)(iv) ("under this subchapter").  As the Third Circuit explained in *In re Avandia*, "the United States Code Service uses the word 'title' in place of 'subchapter,' favored by the United States Code Annotated." 685 F.3d at 359 n.10. There is no substantive difference.

[14] 42 U.S.C. § 1395w-22(a)(4)(A).

[15] 42 C.F.R. § 422.108(f).

[16] CMS Memorandum to Medicare Advantage Organizations and Prescription Drug Sponsors (Dec. 5, 2011), *available at* http://www.cms.gov/Medicare/Health-Plans/HealthPlansGenInfo/downloads/21_ MedicareSecondaryPayment.pdf; Medicare Managed Care Manual, Ch. 4, § 130.3 (conditional MAO payments are subject to recovery).

[17] *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984).

judgment as long as it is a permissible construction of the statute,"[18] particularly where, as here, the statute governs "a complex and highly technical regulatory program."[19] That is precisely what the Third Circuit held in *In re Avandia*, where it stated that it would have deferred to the Secretary's interpretation even if the MSP statute were ambiguous (which it is not).[20]

**D.    Applying 42 C.F.R. § 411.24(i) to the facts of this case, Western Heritage remains liable to Humana notwithstanding its payment to Reale.**

Under the plain language of the MSP regulations, Western Heritage remains liable for Humana's conditional payments, even though it paid the money due Humana to Reale and her attorney.  The MSP law and its implementing regulations required Reale and her attorney to either (1) repay the Medicare benefits within 60 days of receiving payment from Western Heritage (42 C.F.R. § 411.24(h)) or (2) appeal Humana's determination that it was entitled to reimbursement within sixty (60) days through an appeal process that concludes with a decision by the Medicare Appeals Council on behalf of the Secretary of Health and Human Services (42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.582(b)).[21]  When Reale did not repay the Medicare benefits advanced on her behalf within the 60-day period, and did not appeal Humana's "organization determination," Western Heritage was obligated as a matter of law to reimburse Humana.  A declaratory judgment to that effect will assist the parties in resolving this case.

More generally, a ruling declaring Western Heritage's obligations under the MSP law will confirm the applicable rules for parties entering into personal injury settlements with MA enrollees.  In doing so, the Court will remind liability insurers that they delegate the repayment

---

[18] *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S.Ct. 817, 826-27 (2013).
[19] *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quotation marks omitted).
[20] *In re Avandia*, 685 F.3d at 366.
[21] 42 C.F.R. § 422.582(b), (c) provides that an appeal (in Medicare-speak, a "request for reconsideration") must be made within 60 calendar days, unless additional time is requested and granted.  Reale chose not to appeal through the Medicare appeals process, and as part of the settlement, Western did not obtain authorization to appeal on her appeal on her behalf.

of the Medicare benefits advanced by the MA organization to the MA enrollee and her attorney at their own risk, because if the enrollee or her attorney fails or refuses to reimburse the MA organization within 60 days, the liability remains liable.   Accordingly, Humana respectfully requests that this Court enter a judgment declaring that Western Heritage, as the primary payer, remains liable for repaying the Medicare benefits expended to treat the injuries Reale sustained.

> **E.**   **This issue is important because if liability insurers are at risk for non-payment by non-compliant MA enrollees and personal injury counsel, they will take measures to assure that MA organizations are reimbursed – and in doing so, will save the Medicare program considerable sums.**

Liability insurers routinely agree to settlements in which they pay *both* the money owed to the MA enrollee *and* the money owed to the MA organization to the MA enrollee and his or her attorney.  Many personal injury attorneys that request settlements be structured this way do not simply forward to the MA organization the money due it.  Instead, all too often, they engage in a variety of gambits designed to evade their clients' (and their own) MSP repayment obligations.

Permitting liability insurers to wash their hands of a settlement as soon as its funds are paid to tort plaintiffs serves to reinforce the mistaken belief that they can reduce their overall settlement expense with MA enrollees by paying the whole settlement, including the amount due the MA organization, to the MA enrollee and his or her attorney and allowing the plaintiff to assume the risk of evading the MSP repayment obligations.  The key to stopping this practice is to undermine the liability insurer's erroneous belief that it will have no financial responsibility for what happens after it delivers the MA organization's money to the MA enrollee and his or her attorney.

The federal courts can alter that calculation by applying the controlling regulations promulgated by CMS, which make clear that the liability insurer remains liable if the MA

enrollee or the personal attorney does not reimburse the MA organization.  By applying those MSP regulations as CMS intended, courts may change the financial calculus for liability insurers.  If liability insurers understand that they have a financial incentive to make sure MA organizations get paid the sums due them under the MSP law and regulations, they will no longer leave it up to the MA enrollee and his or her attorney to decide whether and how much to repay MA organizations.  Leaving it up to the enrollee may, as evidenced by this case, result in costly litigation and significantly reduced MSP savings.  Putting the onus on liability insurers as primary payers, as Congress and the Secretary intended, would remove the opportunity for a great deal of money to bleed from the Medicare program through attempts at "lien"-avoidance.

II.   **Humana is entitled to summary judgment on its claim for double damages under the MSP private cause of action.**

A.   **The undisputed facts establish that Humana is entitled to recover under the MSP private cause of action.**

In Count I of the Complaint, Humana also brought a claim for double damages against Western Heritage under the MSP private cause of action authorized by 42 U.S.C. § 1395y(b)(3)(A).[22]  That private cause of action is now the recognized means by which an MA organization or other private party may secure compliance from primary plans that have failed or refused to reimburse Medicare benefits.[23]  As the Third Circuit correctly held in *In re Avandia*, the text of that statute "unambiguously provide[s] Humana with a private cause of action."[24]

Likewise, this Court has already ruled that Humana sufficiently alleged a claim under the

---

[22] Complaint, Doc. 1, Count I, ¶¶ 46-52.
[23] *See, e.g., Thomas v. Standard Fire Ins. Co.,* 2:11-CV-00462-JRG, 2012 WL 3242226 (E.D. Tex. Aug. 7, 2012) ("It is well-settled that MSP liability (double damages) attaches when a primary plan fails to make payment "promptly" for medical costs for which they are responsible.")
[24] *In re Avandia*, 685 F.3d at 365.

MSP private cause of action.[25]  By denying Western Heritage's Motion to Dismiss Count I, this Court aligned itself not only with the Third Circuit's *In re Avandia* decision,[26] but also the Sixth Circuit's decision in *Michigan Spine and Brain Surgeons*,[27] and, more recently, the rulings of the United States District Courts in *Humana Insurance Company v. Farmers Texas County Insurance Company*[28] and *Collins v. WellCare Healthcare Plans, Inc.*[29] Each of those courts has allowed the MSP private cause of action to be brought in the context of Medicare Advantage.

In *In re Avandia*, the Third Circuit found that MA organizations do have the right to bring MSP actions under 42 U.S.C. § 1395y(b)(3)(A) because denying that right "would undermine the very purpose of the MA program and that Congress did not intend this result."[30] In *Humana Insurance Company* and *Collins*, the district courts agreed with the Third Circuit. And in *Michigan Spine and Brain Surgeons*, the Sixth Circuit allowed a provider to bring the private cause of action for double damages, in a case where a Medicare Advantage organization had advanced the Medicare benefits.

The undisputed evidence in the record, including evidence submitted with this motion, establishes Humana's right to summary judgment under the elements of the private cause of action created by 42 U.S.C. § 1395y(b)(3)(A).  That statute creates liability any time "a primary plan . . . fails to provide for primary payment (or appropriate reimbursement)" of conditional Medicare payments. As courts applying that statute have explained, "There are two important conditions precedent that must be satisfied prior to invoking this cause of action . . . . First,

---

[25] Endorsed Order on March 29, 2013, Doc. 41.
[26] *In re Avandia*, 685 F.3d at 365.
[27] *Michigan Spine & and Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir. 2014).
[28] *Humana Ins. Co. v. Farmers Texas County Mut. Ins. Co.*, No. 13-cv-611 (W.D. Tex. Sep. 24, 2014).
[29] *Collins v. WellCare Healthcare Plans, Inc*, 2014 U.S. Dist. LEXIS 174420 (E.D. La. Dec. 16, 2014).
[30] *In re Avandia*, 685 F.3d at 363.

Medicare must have actually made payments on Plaintiff's behalf. . . . The second condition precedent is that the insurer must be 'responsible' for making the payments."[31]

There is no genuine dispute as to any fact material to Western Heritage's liability under this statute. First, Humana made payments of at least $19,155.41 for injuries sustained by Ms. Reale in connection with the events at issue in her lawsuit against Hamptons West and its liability insurer, Western Heritage.[32]   These payments, made by a Medicare Advantage Organization on behalf of a Medicare enrollee, are by definition Medicare benefits.[33]

Second, Western Heritage's responsibility as a primary payer is "demonstrated" in this record.[34]   Under 42 U.S.C. § 1395y(b)(2)(B)(ii), the responsibility of a primary plan may be "demonstrated" by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." Here, Western Heritage acknowledges that it insured Hamptons West with respect to Mrs. Reale's claims in the personal injury action, and that Mrs. Reale entered into a settlement with Western Heritage to resolve that case.[35]   As the settlement documents submitted

_____

[31] *Sullivan v. Farm Bureau Mut. Ins. Co.*, No. 1:10-cv-909, 2011 U.S. Dist. LEXIS 35817, at *9 (W.D. Mich. Apr. 1, 2011) (citing *Geer v. Amex Assur. Co.*, Case No. 09-11917, 2010 U.S. Dist. LEXIS 66834, at *9-10 (E.D. Mich. July 6, 2010); *Perry v. United Food & Commercial Workers Dist. Unions, 405 & 442,* 64 F.3d 238, 244 (6th Cir. 1995)).
[32] SUMF ¶ 7.
[33] *See* 42 U.S.C. § 1395w-21(a) ("Choice of Medicare benefits through Medicare Choice plans"); *see also Cupp v. Johns and Humana Ins. Co.*, 2014 U.S. Dist. LEXIS 30537, *3-4 (W.D. Ark. Mar. 10, 2014) ("The MA program was enacted to be an alternative to Medicare Parts A and B that allows individuals to receive their Medicare benefits from private insurance companies instead of receiving their benefits directly from the federal government."); *Masey v. Humana, Inc.,* No. 8:06-CV-1713-T24-EAJ, 2007 WL 2788612, *1 (M.D. Fla. Sept. 24, 2007) ("the Court concludes that these claims are 'inextricably intertwined' with a claim for Medicare benefits, and therefore, Plaintiff was required to exhaust her administrative remedies before seeking judicial review.").
[34] *See* SUMF, Exh. 5 Release and Hold Harmless Agreement; SUMF, Exh. 6, Closing Statement executed June 18, 2010 and June 22, 2010.
[35] Western Heritage's Reply Brief in Support of Motion to Dismiss Complaint, Doc. 30, at 2.

with the Statement of Undisputed Material Facts show, Mrs. Reale released Western Heritage from "any and all causes of action, . . . damages, including compensatory and punitive damages, medical payment benefits, sums of money, . . . claims and demands of whatsoever kind of nature . . . " in connection with the personal injury action.[36]  This clearly is a "release . . . of payment for items or services included in a claim against the primary plan or the primary plan's insured" under 42 U.S.C. § 1395y(b)(2)(B)(ii).  Thus, Western Heritage's responsibility to pay as a primary payer is established.

Finally, it is undisputed that Ms. Reale refused to honor (or appeal) Humana's MSP reimbursement request.[37]  Thus, under 42 C.F.R. § 411.24(i)(1), Western Heritage remains liable to Humana as a primary payer.  Because each of these facts is uncontested in both a procedural and substantive sense, Humana is entitled to judgment as a matter of law on Count I.

In response to this motion, Western Heritage may wish to rehash the arguments it raised in its Motion to Dismiss, Doc. 19, but those arguments should be addressed to the United States Court of Appeals for the Eleventh Circuit, not repeated here.  The "just, speedy and inexpensive" determination of this action, Fed. R. Civ. P. 1, would be best served by an entry of judgment.

**B.     Humana is entitled to recover double the amount Western Heritage owed.**

As verified by the Affidavit of Brian Bargender, Humana paid at least $19,155.41 in Medicare benefits on behalf of Mrs. Reale.[38]  Humana made an "Organization Determination" that it paid that amount for the injuries Mrs. Reale sustained in the accident that was the subject of the settlement with Western Heritage.[39]  Western Heritage has never disputed the amount

---

[36] SUMF, Exh. 5, Release, at 1.
[37] SUMF ¶¶ 15, 19.
[38] SUMF, Exh. 4, Declaration of Brian Bargender ("Bargender Decl.") ¶¶ 5-7.
[39] *See* SUMF, Exh. 4, Bargender Decl., Exh. 2 (March 11, 2010 Letter); *see also* 42 U.S.C. § 1395w-22(g)(1)(a); 42 C.F.R. § 422.566(a).

Humana paid.

Moreover, even if there were a dispute about the amount Humana advanced in Medicare benefits on Mrs. Reale's behalf, it would be too late for Western Heritage to do anything about it. Under the Medicare Act and its implementing regulations, the burden was on Mrs. Reale or someone acting on her behalf to appeal Humana's reimbursement determination in a timely manner.[40]  Mrs. Reale has never disputed the amount Humana paid, and in any event, she did not appeal.  Nor did Western Heritage obtain authorization to appeal on Mrs. Reale's behalf when it settled with her.  Because Humana's determination of the amount owed under the MSP law has never been challenged in the Medicare appeal process, any objection to that determination is precluded by 42 U.S.C. § 405(h), discussed below.  Thus, Humana's determination of the amount due may not be challenged in defense of this litigation.

Accordingly, Humana requests summary judgment in amount of $38,310.82, or double the amount of the Medicare benefits it had paid as of when Western Heritage settled with Mrs. Reale ($19,155.41).

**III.   The state court action filed by Reale does not defeat this motion, because state courts do not have jurisdiction to interfere with the Medicare program.**

Humana anticipates that Western Heritage will oppose this motion on the ground that Mrs. Reale filed an action against Humana in the 11th Judicial Circuit Court for Dade County, Florida, in which she challenged Humana's determination of the extent to which the Medicare benefits Humana advanced must be repaid.[41]  The state court erroneously applied state law and decided upon a much lower amount than Humana requested under the MSP law.  State courts,

---

[40] *See* 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.582(b); *Acquisto v. Secure Horizons ex rel. United Healthcare Ins. Co.*, 2:08-CV-847-FTM-29, 2011 WL 6780870 (M.D. Fla. Dec. 27, 2011) *aff'd in part*, 504 F. App'x 855 (11th Cir. 2013) (explaining appeal process for an organization determinations).
[41] *See* SUMF, Exh. 9, *Mary Reale et al. v. Humana Medical Plan, Inc.*, 11th Judicial Circuit for Dade County, Florida, Case No. 10-31906 CA 30 (filed June 4, 2010) ("State Court Compl.").

however, do not have jurisdiction over Medicare benefits generally or MSP determinations in particular. Because the state court did not have subject matter jurisdiction to review a Medicare determination by a MA organization, the state court judgment is void and should be ignored.[42]

In the state court litigation, Humana argued that federal law required Mrs. Reale to present any objections regarding Humana's determination to the Medicare appeals process. Medicare incorporates the Social Security appeals process, described at 42 U.S.C. § 405(g). *See* 42 U.S.C. §§ 1395ff and 1395ii. A separate statute, 42 U.S.C. § 1395w-22(g)(5), tailors the § 405 appeal process to Medicare Advantage.

The adoption of the § 405 process as the appeal process for Medicare Advantage is significant, because § 405 brings with it an extensive jurisprudence, including the Supreme Court's seminal decisions in *Heckler v. Ringer*[43] and *Shalala v. Illinois Council*.[44] That jurisprudence makes clear a suit under § 405 may only be brought in federal court – and even there, only after the Medicare enrollee has fully exhausted an appeal process that concludes with a decision by the Medicare Appeals Council (the same entity that decides Medicare appeals arising out of the traditional fee-for-service option). Moreover, such suits must be brought against the Secretary of Health and Human Services, not against a Medicare Advantage Organization. The Medicare Act is clear that no MSP determination "shall be reviewed by any person, tribunal, or governmental agency except as herein provided." Put simply, state courts do not have jurisdiction over MSP cases.[45]

---

[42] Judgments may be collaterally attacked if the issuing court lacked subject matter jurisdiction. *Hardman v. Koslowski*, 135 So. 3d 434, 436 (Fla. 1st DCA 2014) ("[A] lack of subject matter jurisdiction renders a judgment void, 'and a void judgment can be attacked at any time, even collaterally.'") (quoting *Strommen v. Strommen*, 927 So. 2d 176, 179 (Fla. 2d DCA 2006)).

[43] *Heckler v. Ringer*, 466 U.S. 602 (1984).

[44] *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1 (2000).

[45] *See, e.g., Freeze v. Coastal Bend Foot Specialist*, 2006 U.S. Dist. LEXIS 87156, at *12 n. 4 (S.D. Tex.

Federal courts have repeatedly reaffirmed that Medicare Advantage *is* Medicare, and that 42 U.S.C. §§ 405 and 1395w-22(g) require challenges to MSP determinations by Medicare Advantage organizations to go through the Medicare appeals process.   Just this month, for example, Judge Moore of this District ruled in *Associates Rehabilitation Recovery, Inc. v. Humana Medical Plan, Inc.* that "[a] lawsuit that seeks to recover on any claim 'arising under' the Medicare Act must first be brought through the DHHS administrative appeals process before it can be taken to federal court."[46]  Similarly, Judge Bloom of this District held a few months ago in *Einhorn v. CarePlus Health Plans, Inc.* that "Medicare beneficiaries must exhaust administrative remedies under the Medicare Act before filing claims involving the Medicare Secondary Payer law and the failure to do so deprives the district court of jurisdiction."[47]

Other courts agree with the judges in this District. This past week, the court in *Collins v. WellCare Healthcare Plans, Inc.* dismissed a Medicare Advantage enrollee's suit seeking a declaration that the MSP law did not require her to reimburse her MA organization for conditional Medicare payments after she received the proceeds of a tort settlement.  The district court rejected the suggestion that the suit was "anchored in . . . State Law," finding instead that "such a declaration inherently demands an interpretation of the Medicare Act."[48]  Because the MA enrollee's declaratory judgment claim "therefore arises under the Medicare Act," the Court found that it "lacks subject matter jurisdiction to entertain her claim" in light of the plaintiff's

---

Dec. 1, 2006)  ("Of note, the state court would not have any jurisdiction over a claim arising out of the Medicare Act, such jurisdiction is exclusively federal and exclusively pursuant to 42 U.S.C. § 405(g)."); *Redmond v. Secure Horizons, Pacificare, Inc.,* 60 Cal. App. 4th 96, 104, 70 Cal. Rptr. 2d 174 (Cal. App. 1997) ("Even if plaintiff had pursued her administrative remedies to a final decision by the Secretary, her only avenue of judicial review would be in federal court. A state trial court would still lack jurisdiction.").
[46] *Associates Rehabilitation Recovery, Inc. v. Humana Medical Plan, Inc.,* No 14-cv-21677-KMM, Doc. 42, at *5 (S.D. Fla. Dec. 10, 2014).
[47] *Einhorn v. CarePlus Health Plans, Inc.,* 2014 U.S. Dist. LEXIS 126124, *4 (S.D. Fla. Aug. 29, 2014).
[48] *Collins,* 2014 U.S. Dist. LEXIS 174420, at *18.

admitted failure to exhaust the mandatory Medicare appeals process.[49]

Earlier in the year, in *Cupp v. Johns and Humana Ins. Co.*, the MA enrollee similarly attempted to challenge Humana's determination of the amount due under the MSP law in state court. Humana removed the case, and the federal court dismissed it, stating:

> The Court finds that Cupp's claim that Humana is wrongfully demanding reimbursement of its conditional payment arises under the provisions of the Medicare Act and is a claim that requires a determination regarding what amount Cupp—as an MA enrollee—is required to pay with respect to the services he received. His claim falls within the ambit of those claims required to first be presented through the Medicare review and appeals process. If, after going through that process, Cupp receives a determination that he believes is erroneous or unsatisfactory, he may then adjudicate his claim through the courts. At that point, the court would have the substantial benefit of a complete administrative record for review.[50]

*See also Potts v. Rawlings Co., LLC.*[51] ("Plaintiffs argue, they are not required to exhaust any administrative remedies. Plaintiffs' arguments are contradicted by numerous decisions, all of which hold that lawsuits concerning MSP reimbursement rights must be exhausted at the administrative level and that therefore a district court is without jurisdiction to hear the claims."); *Phillips v. Kaiser Foundation Health Plan, Inc.*[52] ("To the extent Plaintiff is claiming that Kaiser is running afoul of the Medicare Act by collecting reimbursement from her in an amount greater than what is permitted under that Act she is making a claim for benefits and must exhaust that claim.").

The state trial court disregarded the clear statutory bar to assuming jurisdiction over Mrs. Reale's attempt to attack Humana's MSP determination because it believed that a different statute—Florida's collateral source law, Fla. Stat. § 768.76—controlled Humana's right to be

---

[49] *Id.*
[50] *Cupp v. Johns and Humana Ins. Co.*, 2014 U.S. Dist. LEXIS 30537 at *7-8 (W.D. Ark. Mar. 10, 2014).
[51] 897 F. Supp. 2d 185, 193 (S.D.N.Y. 2012).
[52] *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1089 (N.D. Cal. 2011).

reimbursed for conditional Medicare payments it made under its contract with the Secretary of Health and Human Services. That conclusion was wrong for multiple reasons.

First, Florida's collateral source law would be preempted by federal law even if it did apply. Part C of the Medicare Act contains broad, express preemption provisions that override any state law limiting an MA plan's right to recover the full amount of its conditional payment. Part C's stand-alone preemption provision, 42 U.S.C. § 1395w-22(a)(4), provides: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part."[53]   In addition, the Medicare Advantage MSP provision, § 1395w-22(a), explicitly gives an MA organization the right to reimbursement "[n]otwithstanding any other provision of law," and so would also preempt Fla. Stat. § 768.76. Finally, the Florida collateral sources statute would be conflict preempted, because it would conflict with federal law and interfere with federal administration of the Medicare program.[54]

Second, by its plain terms, Florida's collateral source statute does not apply to payments made under Title XVIII of the Social Security Act—*i.e.*, the Medicare Statute. [55]   That plainly includes payments by Medicare Advantage organizations like Humana, which are made under Part C of Title XVIII of the Act.

_____

[53] *See also* 42 C.F.R. § 422.108(f); *Uhm v. Humana Inc.*, 620 F.3d 1134, 1149 (9th Cir. 2010); *Potts v. Rawlings Co.*, 897 F. Supp. 2d 185, 199 (S.D.N.Y. 2012) ("[T]o the extent that [New York law] would eliminate a MA organization's right to seek reimbursement, the statute is preempted by the Medicare Act.").
[54] *Fid. Fed. Sav. Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982); *Baptista v. JP Morgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 (11th Cir. 2011).
[55] Fla. Stat. § 768.76(2)(a)(1) ("(2) For purposes of this section: (a) 'Collateral sources' means any payments made to the claimant, or made on the claimant's behalf, by or pursuant to: 1. The United States Social Security Act, except Title XVIII and Title XIX ....") (emphasis added); *see also*: *State Farm Mut. Auto. Ins. Co. v. Joerg*, 2013 WL 3107207 (Fla. 2d DCA 2013); *Humana Medical Plan, Inc. v. Valdez*, 25 F.Supp.2d 1347 (M.D. Fla. 1997).

Moreover, in the state court litigation, Reale argued the amount of Medicare benefits to be repaid should be reduced to take into account the likely potential jury verdict range in relation to what Reale believed to be the value of her case.[56]   Federal courts have long rejected that argument, holding that the MSP regulations properly require reimbursement of the Medicare benefits advanced without reduction for the relative fault of the parties in the underlying tort action.[57]   Nonetheless, the state trial court refused to follow the Medicare Act, its implementing regulations, and federal case law.  Applying Florida law, it held that Mrs. Reale was required to repay only $3,685.03 of the Medicare benefits in question.[58]

Humana has appealed the trial court's decision, which threatens to undermine Congress's decision to give exclusive control over the Medicare program to the Secretary, who implements the Medicare Act and adjudicates all disputes arising under it, and federal courts, which review the Secretary's final decisions on the record established during administrative review.[59]   As it did in the trial court, Humana pointed to the extensive and unanimous body of federal decisional law holding that, under § 405(h), Medicare beneficiaries may not challenge MSP determinations without exhausting the Medicare appeals process; only after exhaustion may they challenge these determinations in *federal* court in suits against the *Secretary*.[60]   In response, Reale and her counsel cited no decision to the contrary, except for the trial court's own remarkable decision

---

[56] SUMF, Exh. 9, State Court Compl. ¶¶ 11, 14.

[57] *See, e.g., Hadden v. United States of America*, 661 F.3d 298 (6th Cir. 2011); *Zinman v.Shalala*, 67 F.3d 841 (9th Cir. 1995); *In re Zyprexa Prods. Liab. Litig.*, 451 F. Supp. 2d 458, 469 (E.D.N.Y. 2006).

[58] SUMF, Exh. 10, Final Judgment granting Declaratory Relief, ¶ 9, *Mary Reale et al. v. Humana Medical Plan, Inc., supra,* (Fla. 11th Jud. Cir. Ct. Oct. 30, 2012) ("Final Judgment").

[59] *Humana Medical Plan, Inc., v. Mary Reale, et al.*, Fla. 3rd DCA, Case No. 3D12-2883.

[60] *See, e.g. Taransky v. Sec'y of the United States HHS*, 760 F.3d 307 (3rd Cir. July 29, 2014); *Haro v. Sebelius*, 747 F.3d 1099 (9th Cir. 2013, amended, Jan. 2, 2014 2014); *Fanning v. U.S.*, 346 F.3d 386 (3d Cir. 2003); *Cochran v. U.S. Health Care Fin Admin.*, 291 F.3d 775 (11th Cir. 2002); *Wilson v. United States*, 405 F.3d 1002 (Fed. Cir. 2005); *Bucker v. Heckler*, 804 F.2d 258 (4th Cir. 1986); *Einhorn v. CarePlus Health Plans, Inc.*, Case No. 14-61135, 2014 WL 4385912 (S.D. Fla. Sept. 3, 2014) (Medicare Advantage); *Cupp v. Johns*, 2014 WL 916489 (Medicare Advantage); *Taransky v. Sebelius*, 956 F. Supp. 2d 563 (D.N.J. 2013); *Neff v. Sebelius*, No. C13-95-M-DWM, 2013 Wl 5492938 (D. Mont. Oct. 1, 2013).

that, notwithstanding federal law to the contrary, when Medicare beneficiaries elect to receive Medicare benefits through the Medicare Part C option, *state courts* get to decide, *under state law*, whether Medicare benefits should be repaid and in what amount.

The Third District Court of Appeals heard oral argument on June 12, 2013, but has yet to issue a decision (it may be waiting for this Court to rule first). Presumably, the Third District Court of Appeals will follow the law, reverse the trial court's ruling, and dismiss the case for lack of subject matter jurisdiction. But regardless what the Third District may decide, it is clear that Congress did not authorize state court judges to interfere with the Medicare program or to usurp the authority Congress exclusively gave to the Secretary and to the federal courts. Because state courts do not have subject matter jurisdiction to review Medicare benefit or MSP determinations, the decision by the Florida trial court is void. It therefore does not preclude this Court from enforcing federal law or from protecting Medicare and its own jurisdiction.

The Court's resolution of this case may have national implications – the MSP law is the same everywhere. But the Court's decision will have special significance in Florida, and in the Southern District in particular. Nationally, there are about 16.5 million Medicare beneficiaries enrolled in Medicare Advantage plans—or about 30% of all Medicare beneficiaries. In Florida, of 3.8 million Medicare beneficiaries, about 1.5 million—almost 40% are enrolled in Medicare Advantage plans. In the Southern District, there are currently 1,041,803 Medicare beneficiaries. About half—517,357—of those beneficiaries are enrolled in Medicare Advantage plans.[61] The Court's decision will inform how personal injury settlements involving those Medicare Advantage enrollees are handled.

---

[61]   *Available   at*   http://cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/ MCRAdvPartDEnrolData/MA-State-County-Penetration.html.

## CONCLUSION

Humana has established that Western Heritage was the primary payer and thus obligated to repay the Medicare benefits advanced on behalf of Mrs. Reale. Humana has also demonstrated that under §411.24(i)(1), Western Heritage remains liable to repay the Medicare benefits at issue, notwithstanding its payment to Mrs. Reale and her attorney, because Reale did not reimburse Humana. Humana is therefore entitled to summary judgment on Count II.

Humana has also established the elements of the private cause of action under 42 U.S.C. § 1395y(b)(3)(A). Humana paid Medicare benefits in the amount of $19,155.42 for treatment of the injuries Reale sustained in her fall. Western Heritage failed or refused to reimburse Humana. Humana is entitled to summary judgment on Count I.

For the foregoing reasons, Humana respectfully requests that this Court grant its Motion for Summary Judgment, enter a declaratory judgment specifying the parties' rights under the MSP statute and regulations, and enter judgment on Humana's claim under the MSP private cause of action in Humana's favor in the amount of $38,310.82.

Respectfully submitted,

[Lead Counsel]
 Michael P. Abate*
*Application for admission pro hac vice
pending*
DINSMORE & SHOHL, LLP
101 South Fifth St., Ste. 2500
Louisville, Kentucky 40202
Telephone:  502-540-2359
Facsimile:  502-585-2207
Michael.abate@dinsmore.com

[Local Counsel]
Daniel Alter

FL Bar No.: 0033510
Gray Robinson, P.A.
401 E. Las Olas Blvd., Ste. 1850
Ft. Lauderdale, FL 33301
Telephone: 954-761-8111
Facsimile: 954-761-8112
dan.alter@gray-robinson.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon the

Defendant on the 29th day of December, 2014 via Notice of Electronic Filing generated by

CM/ECF or in some other manner for those counsel or parties who are not authorized to receive

electronic Notices of Electronic Filing.

s/ Daniel Alter
DANIEL ALTER

Lewis F. Collins, Jr.
William Schoel
Butler Pappas Weihmuller Katz Craig, LLP
777 S. Harbour Island Boulevard, Suite 500
Tampa, FL 33602
LCollins@butlerpappas.com
wschoel@butlerpappas.com

Neil Selman
Selman Breitman, LLP
11766 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025
NSelman@SelmanBreitman.com

Jennifer J. Capabianco
Selman Breitman, LLP
33 New Montgomery, Sixth Floor
San Francisco, CA 94105
JCapabianco@SelmanBreitman.com

7371175v12