UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-20123-COOKE/TORRES

HUMANA MEDICAL PLAN, INC.,

    Plaintiff,

v.

WESTERN HERITAGE INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Humana Medical Plan, Inc. filed a Motion for Summary Judgment and Memorandum in Support (ECF No. 48). Defendant Western Heritage Insurance Company filed its Opposition to Plaintiff Humana Medical Plan, Inc.'s Motion for Summary Judgment (ECF No. 53), to which Plaintiff Humana Medical Plan, Inc. filed its Reply in Support of Motion for Summary Judgment (ECF No. 55).

I have reviewed Plaintiff's Motion for Summary Judgment, the Response and Reply thereto, Plaintiff Humana Medical Plan, Inc.'s Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (ECF No. 49) and attached exhibits, Defendant, Western Heritage Insurance Company's Statement of Additional Undisputed Material Facts Opposing Plaintiff, Humana Medical Plan, Inc.'s Motion for Summary Judgment (ECF No. 54) and attached exhibits, the record, and the relevant legal authorities. For the reasons provided herein, Plaintiff Humana Medical Plan, Inc.'s Motion for Summary Judgment and Memorandum in Support is granted.

### I. BACKGROUND

This is Humana Medical Plan, Inc.'s ("Humana") action to recover conditional payments of Medicare benefits it made with respect to medical expenses that Mary Reale ("Mrs. Reale"), a Medicare beneficiary and enrollee, incurred.

Humana brings this action against Western Heritage Insurance Company ("Western Heritage"), alleging that Western Heritage, as a primary payer, must now reimburse Humana for the conditional payments Humana made on behalf of Mrs. Reale.

Humana offers Medicare Advantage plans under a contract with the Centers for Medicare and Medicaid Services ("CMS"). Pl.'s Stmnt. Undisputed Material Facts ¶ 1. Mrs. Reale was enrolled in a Humana Gold Plus Medicare Advantage Plan when she sustained injuries in a slip-and-fall accident at Hamptons West Condominiums ("Hamptons West") on or about January 21, 2009. *Id.* at ¶¶ 2-4. Mrs. Reale obtained medical treatment for her injuries, and her healthcare providers billed charges totaling $74,636.17. *Id.* at ¶¶ 5-6. Humana discharged Mrs. Reale's medical charges for a total of $19,155.41. *Id.* at ¶ 7. Mrs. Reale then filed a personal injury action against Hamptons West on June 1, 2009 in the 11th Judicial Circuit Court in and for Miami-Dade County, Florida. *Id.* at ¶ 8. As Hamptons West's liability insurer, Western Heritage and Hamptons West entered into a settlement agreement with Mrs. Reale to resolve all issues regarding liability for a sum of $115,000.00. *Id.* at ¶¶ 9, 11. In that settlement agreement, Mrs. Reale attested that she had no outstanding Medicare liens that could represent a lien or claim against the proceeds she received from Western Heritage. *Id.* at Ex. 5. Additionally, a letter from CMS dated December 3, 2009 confirmed that CMS had no record of processing Medicare claims on behalf of Mrs. Reale. Def.'s Stmnt. Additional Undisputed Material Facts, Ex. 1.

Western Heritage eventually learned of Humana's lien rights and attempted to include Humana as a payee on its draft settlement agreement with Mrs. Reale. However, Mrs. Reale opposed Western Heritage's attempts to include Humana as a payee on the settlement check because she disputed the amount of Humana's lien. *Id.* at Ex. 2. The state court judge ordered Hamptons West to tender full payment to Mrs. Reale without including any lien holder on the settlement check. He simultaneously ordered Mrs. Reale's counsel to hold sufficient funds in a trust account to be used to resolve all medical liens/rights of reimbursement. *Id.* at Ex. 3. As a result of the state court order, Western Heritage tendered the full settlement amount to Mrs. Reale, with the understanding that Mrs. Reale and her attorney

would reimburse Humana. Pl.'s Stmnt. Undisputed Material Facts ¶ 13.

Humana and Mrs. Reale failed to agree on the amount Humana was to be reimbursed so Humana brought suit against Mrs. Reale and her attorney in the United States District Court for the Southern District of Florida on May 7, 2010. *See Humana Medical Plan, Inc. v. Reale*, No. 1:10-CV-21493-MGC. Humana filed a Notice of Voluntary Dismissal of its action against Mrs. Reale and her attorney on November 9, 2011. *Id.* at ECF No. 59. Mrs. Reale then brought suit against Humana in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida seeking a declaration of the exact amount she owed Humana pursuant to Humana's lien. *See Mary Reale et al. v. Humana Medical Plan, Inc.*, No. 10-31906CA30 (Fla. 11th Jud. Cir. Ct. June 4, 2010). The state court found that Mrs. Reale had recovered 33.75% of the full value of her claims in her settlement with Western Heritage and therefore had recovered 33.75% of the total benefits paid by Humana, or $6,464.95. Pl's Stmnt. Undisputed Material Facts, Ex. 10. The state court then further reduced that number by 43%, taking into account the pro-rata share of fees and costs incurred in securing the settlement agreement, thus holding that Humana was entitled to reimbursement in the amount of $3,685.03. *Id.* Humana has appealed the determination of the state trial court to the Third District Court of Appeals, but that court has not yet rendered a decision. Humana filed the instant action against Western Heritage on May 7, 2010.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States,* 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson,* 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson,* 477 U.S. at 247–48).

3

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta,* 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff,* 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC,* 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver,* 549 F.3d at 1343.

### III.   DISCUSSION

Humana brings this Motion for Summary Judgment as to Counts I and II of the Complaint seeking (1) a declaration that Western Heritage remains liable to Humana under the Medicare Secondary Payer Act even though it already settled all claims directly with Mrs. Reale and (2) double damages from Western Heritage under the Medicare Secondary Payer Act's private cause of action provision. To fully understand the basis of Humana's arguments, it is first helpful to review the statutory framework under which Humana brings its claims and then analyze each argument in turn.

### A. The Medicare Regime

In 1965, Congress enacted the Medicare Act by adding Title XVIII to the Social Security Act, with the purpose of establishing a "federally funded health insurance program for the elderly and the disabled." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 506 (1993). The Medicare Act consists of five parts: Part A, Part B,

4

Part C, Part D, and Part E. Parts A and B "create, describe, and regulate traditional fee-for-service, government-administered Medicare." *In re Avandia Mktg. Sales Practices and Products Liability Litigation,* 685 F.3d 353, 357 (3d Cir. 2012) (citing 42 U.S.C. §§ 1395c to 1395i–5; §§ 1395–j to 1395–w). Part C outlines the Medicare Advantage program, wherein Medicare beneficiaries may elect to use private insurers to deliver Medicare benefits. 42 U.S.C. §§ 1395w–21–29. Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains various miscellaneous provisions.

At the time of its inception, Medicare served as the primary payer of all its beneficiaries' medical costs. *See Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.,* 760 F.3d 307, 309 (3d Cir. 2014). However, Congress altered the Medicare payment scheme in 1980, in an effort to reduce escalating costs, adding the Medicare Secondary Payer provisions ("MSP") to the Medicare Act. Omnibus Reconciliation Act of 1980, Pub. L. No. 90–499, 94 Stat. 2599. Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is to serve as the "secondary payer" to other sources of coverage. "In other words, 'Medicare serves as a back-up insurance plan to cover that which is not paid for by a primary insurance plan.'" *Caldera v. Ins. Co. of the State of PA,* 716 F.3d 861, 863 (5th Cir. 2013) (quoting *Goetzmann,* 337 F.3d at 496). The MSP provisions provide that Medicare cannot pay medical expenses when "payment has been made or can reasonably be expected to be made under a workman's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii). If a primary plan "has not made or cannot reasonably be expected to make payment," the Secretary is authorized to make a conditional payment. 42 U.S.C. § 1395y(b)(2)(B)(i). However, since Medicare remains the secondary payer, the primary plan must then reimburse Medicare for all conditional payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

In 1997, Congress amended the Medicare Act to afford beneficiaries the option of receiving Medicare benefits through private insurers, also known as Medicare Advantage Organizations ("MAOs"). "The congressional goal in creating the Medicare Part C option was to harness the power of private sector competition to

stimulate experimentation and innovation to create a more efficient and less expensive Medicare system." *See* Gary Reed, *Medicare Advantage Misconceptions Abound,* 27 Health Law 1, 3 (2014); *see also Parra v. Pacificare of Arizona,* 715 F.3d 1146, 1152 (9th Cir. 2013) (quoting H.R. Rep. No. 105–149, at 1251 (1997)) ("Part C is intended to 'allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare and enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options.'"). Beneficiaries who elect to receive their benefits through the traditional Medicare scheme and those who elect to receive their benefits through an MAO plan are all considered Medicare beneficiaries. "The MAO is required to provide the benefits covered under Parts A and B to enrollees, but it may also provide additional benefits to its enrollees." *In re Avandia,* 685 F.3d at 358 (citing 42 U.S.C. § 1395w–22(a)(1)–(3)).

### B. MAO Private Cause of Action Under Medicare Secondary Payer Act

The Medicare Secondary Payer Act ("MSP Act") affords secondary plans a remedy against primary payers who fail to satisfy their obligations to make primary payments or to reimburse conditional Medicare payments. It does so by establishing two causes of action against noncompliant primary plans. The first cause of action belongs exclusively to the United States, which "may bring an action against any or all entities that are or were required or responsible…to make payment…under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii). The second cause of action is a private cause of action with no particular plaintiff specified:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). While the Eleventh Circuit has not yet addressed the issue of whether a Medicare Advantage Organization, such as Humana, may bring a private cause of action against a primary plan under the secondary provision of the

6

Act, the Third Circuit has addressed the issue and held that it can. *See In re Avandia*, 685 F.3d at 359. The Third Circuit concluded that a plain reading of the text of Section 1395y(b)(3)(A) "unambiguously provide[s] Humana with a private cause of action," and that "even if the statute's text were deemed to be ambiguous, [the Court] would apply *Chevron* deference and would reach the same conclusion." *Id.* at 365-66. The Third Circuit found that under a *Chevron* analysis, it would be required to defer to the regulations issued by CMS to resolve any statutory ambiguity. Regulations issued by CMS make clear that the provision extends the private cause of action to MAOs. Those regulations state that "MA[Os]…will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108. Moreover, CMS directors sent out a memorandum on December 5, 2011 reasserting this position: "[n]otwithstanding [ ] recent court decisions, CMS maintains that the existing MSP regulations are legally valid and an integral part of Medicare Part C and D programs." Ctrs. for Medicare and Medicaid Svcs., Dep't of Health and Human Svcs. Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011).

The Ninth Circuit has also addressed whether an MAO has a private right of action to pursue reimbursement under the MSP Act. *See Parra*, 715 F.3d at 1154-55. It found that the MSP Act does not create a private right of action, but instead, affords MAOs the right to establish such rights within their contracts. *Id.* at 1153-54. Western Heritage argues that this Court should follow *Parra* and "interpret the Medicare Act as not providing a private right of action in favor of MAOs such as Humana." Def.'s Resp. 10. *Parra* involved a suit by Manuel Parra's wife and children (the "Survivors") seeking injunctive relief and a declaration that health insurance provider PacifiCare was not entitled to any reimbursement payments from the wrongful death payments they received from Geico. 715 F.3d at 1150. In deciding the issue of an MAOs private right of action, the Ninth Circuit appeared to pay particular attention to fact that "PacifiCare's claim for relief [was] not against the insurer, or even against Parra's estate for sums received from a primary plan for medical expenses, but rather against the Survivors and their claim to this disputed

7

res." *Id.* at 1154. The Ninth Circuit, in acknowledging that the unique circumstances of *Parra* distinguished it from *In re Avandia*, declared that it "need not resolve whether *Avandia* was decided correctly because its does not aid PacifiCare." *Id.* at 1154. I too find the facts of *Parra* distinguishable from the facts of the case at hand, and its holding, inapplicable.

I find the Third's Circuit's analysis regarding the ability of an MAO to bring a private cause of action under the MSP Act to be persuasive. The statutory text of the MSP Act clearly indicates that MAOs are included within the purview of parties who may bring a private cause of action. Additionally, even if the statutory text was not clear, I agree with the Third Circuit that such ambiguity would trigger *Chevron* deference and lead to the same result.

**C. Western Heritage's Continuing Liability to Humana under the MSP Act**

Having determined that MAOs, such as Humana, may maintain a private cause of action under the MSP Act, I will now turn to whether Humana may bring this particular cause of action against Western Heritage, given that Western Heritage has already directly settled all claims with Mrs. Reale, the Medicare beneficiary.

Humana argues that Western Heritage, as a primary payer under the MSP Act, is responsible for reimbursing the Medicare benefits Humana advanced on behalf of Mrs. Reale. Humana's argument concerning Western Heritage's continuing liability to reimburse stems from its classification of Western Heritage as a "primary payer." Whether Western Heritage's settlement with Mrs. Reale constitutes a primary plan under the MSP Act is an important determination because there can only be a private cause of action "in the case of a primary plan." 42 U.S.C. § 1395y(b)(3)(A). The MSP Act explicitly states that Medicare, as the secondary payer, may not make payment when "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance," all of which are considered to be primary plans under the plain meaning of the statute. 42 U.S.C. § 1395y(b)(2)(A)(ii). The MSP provisions further explain that "a primary plan…shall reimburse the appropriate Trust Fund…if it is demonstrated that such primary plan

8

has or had a responsibility to make payment," which responsibility "may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release…of payment for items or services included in a claim against the primary plan or the primary plan's insured."  42 U.S.C. § 1395y(b)(2)(B)(ii).

In this case, Western Heritage, as Hamptons West's liability insurer, entered into a settlement agreement with Mrs. Reale to resolve all personal injury claims she had against Hamptons West. That settlement agreement, wherein Western Heritage reimbursed Mrs. Reale for medical expenses she incurred as a result of injuries she sustained at Hamptons West, demonstrates Western Heritage's responsibility under the MSP Act to reimburse Humana for the Medicare benefits it paid on behalf of Mrs. Reale. Thus, Western Heritage is a primary payer under the provisions of the MSP Act and is responsible for reimbursing the Medicare benefits Humana advanced, even in light of its agreement with Mrs. Reale settling all claims. *See Brown v. Thompson*, 374 F.3d 253 (4th Cir. 2004) (finding that Kaiser Health Plan acted as a primary plan within the meaning of the MSP Act when it paid out settlement proceeds in a medical malpractice lawsuit, thus triggering Medicare's right to reimbursement); *see also* Medicare Managed Care Manual, Ch. 4, § 130.3 ("Secondary payer status can also be triggered due to legal settlements…the MAO is the secondary payer for an MA enrollee when the proceeds from the enrollee's no-fault or liability settlement is available.").

### D. Double Damages Under 42 U.S.C. § 1395y(b)(3)(A)

Humana seeks to recover double damages from Western Heritage pursuant to 42 U.S.C. § 1395y(b)(3)(A), which states: "There shall be established a private cause of action for damages (*which shall be in an amount double the amount otherwise provided*) in the case of a primary plan which fails to provide payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)" (emphasis added). In support of its claim, Humana references a demand letter it sent to Western Heritage seeking indemnification for payments it made on behalf of Mrs. Reale. Pl.'s Reply, Addendum. Humana asserts that Western Heritage knew of its responsibilities to reimburse Humana but affirmatively decided to ignore Humana's demand and to

litigate the matter of its liability instead. Humana seeks reimbursement in the amount of $38,310.82, or double the amount of Medicare benefits it paid as of when Western Heritage settled with Mrs. Reale for $19,155.41. Western Heritage contends that it was not aware that Medicare had advanced payment on behalf of Mrs. Reale when it entered into settlement negotiations with Mrs. Reale and that there remains a question of fact as to the amount Humana can recover because the settlement amount is subject to reduction based on procurement costs.

I have already determined that pursuant to the MSP Act's private cause of action, Humana has a right to recover from Western Heritage the benefits it paid on behalf of Mrs. Reale. That same statute includes a provision allowing for the recovery of double damages in cases where the primary plan fails to provide payment. Here, Western Heritage settled with Mrs. Reale on behalf of Hamptons West, but has thus far failed to reimburse Humana for the medical expenses it advanced on behalf of Mrs. Reale. Accordingly, Humana is statutorily entitled to recover an amount double what it paid on behalf of Mrs. Reale.

Western Heritage's arguments regarding its ignorance of any payments advanced by Medicare are unavailing, as the record clearly reflects that Western Heritage was, in fact, aware that Humana, a Medicare Advantage Organization, had advanced payment of medical expenses on behalf of Mrs. Reale. This is evidenced by Western Heritage's attempts to include Humana on the settlement agreement it entered into with Mrs. Reale. Medicare regulations provide that "[i]f the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days." 42 C.F.R. § 411.24(h). This obligation applies whether the third-party payment comes from a settlement or stipulation agreement. *See United States v. Sosnowski*, 822 F. Supp. 570, 573 (W.D. Wis. 1993). Additionally, "[i]n the case of liability insurance settlements…[i]f Medicare is not reimbursed as required by paragraph (h)…the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party." 42 C.F.R. § 411.24(i)(1); *see Manning v. Util. Mut. Ins. Co.*, Case No. 98-Civ-4790, 2004 WL 235526, at *7 (S.D.N.Y. Feb. 9, 2004) ("Medicare's right of recovery against the insurer is not precluded by the insurer's settlement payment to the beneficiary"). Therefore, after

Western Heritage became aware of payments Humana advanced on behalf of Mrs. Reale, it had an obligation to independently reimburse Humana.

Western Heritage's claim that questions of fact remain regarding the amount Humana can recover is also unavailing. Humana sent Mrs. Reale an Organization Determination letter in March 2010 alerting her that Humana was owed reimbursement in the amount of $19,155.41. Pl.'s Stmnt. Undisputed Material Facts, Ex. 4. However, Mrs. Reale failed to challenge that determination through the administrative procedures set up to do so, thus disallowing any further judicial scrutiny of that claim amount. *See Acquisto v. Secure Horizons ex rel. United Healthcare Ins. Co.*, Case No. 2:08-cv-847-FtM-29DNF, 2011 WL 6780870, at *7 (M.D. Fla. Dec. 27, 2011); *see also Einhorn v. CarePlus Health Plans, Inc.*, Case No. 14-61135-Civ-Bloom/Valle, 2014 U.S. Dist. LEXIS 126124, at *4-5 (S.D. Fla. Sept. 3, 2014). Therefore, no questions of fact remain regarding the amount Western Heritage must reimburse to Humana. The MSP Act private cause of action makes clear that double damages attach, which in this case amounts to $38,310.82.

## IV. CONCLUSION

Having reviewed the arguments and the record, there exist no genuine disputes as to any material facts for determination at trial. It is clear that, as a matter of law, Humana is entitled to maintain a private cause of action for double damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

Accordingly, it is **ORDERED and ADJUDGED** that Plaintiff Humana Medical Plan, Inc.'s Motion for Summary Judgment and Memorandum in Support (ECF No. 48) is **GRANTED**. The Clerk is directed to **CLOSE** this case. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE AND ORDERED** in chambers at Miami, Florida, this 16th day of March 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*